OCEAN TOW BOAT CO. (SONDERBURG v.). See Case No. 13,175.

---

## Case No. 10,414.

### The OCEANUS.

[5 Ben. 545.] [1]

District Court, S. D. New York. March, 1872. [2]

COLLISION OFF THE BATTERY — STEAMBOAT FOLLOWING ANOTHER—HOLDING COURSE.

1. The steam propeller O. and the steamboat N. came in collision off the Battery, in New York harbor. Each of them belonged to a line of vessels running from New York through Long Island Sound. The starting point of the N. was the upper side of pier 28, North river, and that of the C. was the lower side of pier 27, North river, and the hour for each to start was 4 p. m. On the afternoon of November 27th. 1867, both vessels started, the N. being the first to leave her pier. The tide was ebb, and the N., in order to avoid vessels at anchor below her pier, went out into the river a considerable distance to the westward of them, before turning down the North river. As she went out, the tide carried her down, and those in her pilot house lost sight of the O., and did not see her again till immediately before the collision. The O. left her pier almost at the same time, and turned down the river east of the vessels at anchor. Off the Battery were vessels lying at anchor, through which both steamers had to make their way, in order to turn into the East river. The N., which was the faster boat of the two, but had the farther distance to go, to get into the East river, turned towards it, so as to cross the bows of the O. The O. kept her course and struck the N. on her port side. The N. did not stop her engine till after the collision. The O. stopped and backed her engine as soon as it was seen that the N. was crowding on her course: Held, that, although the N. left her pier first, she was not, in view of the fact that the course she took was the longer one to enable her to reach the point where both courses entered the East river, the foremost boat, but the following boat.

2. The fact that no one in the pilot house of the N. paid any attention to the O., was negligence on the part of the N., and the cause of the collision.

3. The courses of the two vessels were not crossing, within the meaning of the 14th rule for avoiding collisions; and, even if they could be so considered, the N. did not keep her course, within the meaning of the 13th rule, but crowded on the O., and was solely responsible for the collision.

[Cited in The Express, 44 Fed. 397.]

In admiralty.

W. G. Choate, for libellants.

R. D. Benedict, for claimants.

BLATCHFORD, District Judge. The libel in this case is filed by the owners of the steamboat Newport against the steam propeller Oceanus, to recover for the damages sustained by the libellants, through a collision which took place between the two vessels on the afternoon of November 27th, 1867, shortly after 4 o'clock, p. m., in the harbor of New

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 10,415.]

York. Both of the vessels were in regular lines, carrying merchandise and passengers—the Newport running betwen New York and Newport, Rhode Island. and the Oceanus running between New York and Providence, Rhode Island, and the hour for each to leave New York, on that day, was 4 o'clock, p. m. These facts were known to those in charge of both vessels. The course of each, for her voyage, was, from her berth, down the North river, around the Battery, into the East river, and up the East river, by way of Hell Gate, into Long Island Sound. The berth of the Newport was the upper side of pier 28, North river. The berth of the Oceanus was the lower side of pier 27, North river.

The libel alleges, that the Newport left her dock about 4 o'clock, p. m., the Oceanus at the time being at her dock, blowing off steam; that, on arriving at or about pier No. 1, North river, the Newport commenced to turn into the East river; that, as she so began to turn, she slowed and stopped, to allow a tug-boat with a tow to pass ahead of her; that she then proceeded, at a very moderate rate of speed, in her course around the Battery into the East river; that, as she rounded, several small vessels were observed lying at anchor, three of them on the shore or port side, with their heads towards Governor's and Bedlow's Islands, and another farther out in the river, on the starboard side; that the Newport was again slowed and stopped, to enable her to make a straight course between the said three vessels at anchor on her port side and the said vessel at anchor on her outer or starboard side, and was then started slowly ahead; that, when she was nearly abreast of the most southward of the three vessels at anchor on her port side, and while she was pursuing her usual course around into the East river, the Oceanus was observed running up at a high rate of speed on the port quarter of the Newport, nearly in a line with the most southward of the three vessels so lying at anchor, and endeavoring to pass the Newport, in the narrow space between her and the said last mentioned vessels; that the Oceanus, when near the most southward of said vessels, made a sheer to starboard, and ran into the Newport, striking the Newport an angular blow, with her stem, in the after part of the port wheel of the Newport, and breaking through her guard and her braces, and otherwise materially damaging her; that, from the time the Oceanus was first seen at her dock blowing off steam, to the time when she was so observed running up on the port quarter of the Newport, immediately prior to the collision, the Oceanus had never been seen by the pilots in charge of the Newport, nor had she at any time shown ahead of the Newport; that the collision was caused by no fault or negligence on the part of those in charge of the Newport. but was occasioned wholly by the bad navigation, carelessness and misconduct of those in charge of the Oceanus: (1.) In attempting to pass the Newport, as she was turning into the East river, at a place in said river where such passage could not be effected without imminent danger of collision, by reason of the narrow space intervening between the Newport and the vessels lying at anchor on her port side. (2.) In not having given way, as she ought to have done, to the Newport, as the foremost boat, and in not having slowed or stopped her engines until the Newport had got clear of the vessels anchored on either side of her, and a clear passage been thus made for the Oceanus to pass, had she been so minded. (3.) In making a sheer to starboard, when lapping the Newport's port quarter, so near to the Newport as to render collision inevitable.

The answer avers, that the Newport started from her pier a little ahead of the Oceanus, but went out much further into the river, so that, as the vessels went down the river, towards the Battery, the Oceanus was slightly in advance of the Newport; that, as the Oceanus went on, in her course to get into the East river, she was going at a moderate rate of speed, and there were vessels lying off the Battery and below, between which it was necessary for her to go, and she was proceeding cautiously and slowly, making her way through those vessels, when the Newport, which had been all the time outside of the Oceanus, suddenly, and without any reason or excuse, running faster than the Oceanus, undertook to cross directly ahead of the Oceanus, and did so cross the course upon which the Oceanus was proceeding; that, as soon as any indication was seen of the intention of the Newport thus to cross the track of the Oceanus, the engine of the Oceanus was stopped and reversed, but the collision could not then be avoided; and that the Newport had abundance of room to the starboard of the course which she actually pursued, and it was her duty either to have maintained a course to the starboard of the Oceanus, or, if she determined to cross such course of the Oceanus, to cross it astern of her, instead of ahead of her. The answer denies that the collision was caused by any bad navigation or carelessness or misconduct on the part of the Oceanus, and alleges that it was caused by fault and negligence on the part of the Newport. It denies that the Oceanus attempted to pass the Newport, and alleges that the Newport wrongfully and negligently attempted to pass the Oceanus. It denies that the Oceanus was bound to give way to the Newport as the foremost boat, and alleges that the Oceanus was the foremost boat. It denies that the Oceanus did not slow, stop, and back her engines, and alleges that she did slow, stop, and back them. It denies that the Oceanus made any sheer to starboard, and alleges that the Newport was in fault in turning so closely to the course of the Oceanus, in giving no signal, in not keeping a prop-

er lookout, in not stopping and backing in time, and in not porting her helm, so as to carry her free of the course of the Oceanus.

It is established, by the proofs, that. when the Newport left her pier, at the upper side of which she lay, parallel lengthwise with the length of the pier, with her head pointing outwards across the width of the river, the tide being ebb and running towards the Battery, around which she was to go, and which was on her port hand, and there being some vessels lying at anchor out in the river off some of the piers below pier 28, she went out into the river a considerable distance, and beyond and to the westward of those vessels, before heading down the river, instead of turning down nearer to the line of the piers. As she went out from her pier, the ebb tide against her upper side carried her down before turning, so that those in her pilot house naturally lost sight of the Oceanus, which was lying at her pier when the Newport left. The Oceanus, being at the lower side of a pier, and lower down the river, turned down the river inside of the said vessels at anchor, and, although she left her pier after the Newport left her pier, she got headed down the river before or as soon as the Newport did, and went down at a much less distance from the line of the piers than the Newport did. The ultimate destinations and courses of both vessels required that they should each of them describe a curve from the North river, around the Battery, into the East river. Their courses were, in no proper sense, crossing courses. Each was making her way to enter the path off the Battery and between that and Governor's Island, which led into and up the East river. The Oceanus was much nearer to such path than the Newport was, being much nearer to the line of the piers, and, even though the Newport's stem may have been, on lines drawn across the width of the North river, as the two boats went down, further down than the stem of the Oceanus, yet, in view of the objective point and path both were bound for, the Newport must be considered as the hindmost boat. This is also shown by the fact that she was the faster boat of the two. She had a much longer distance to traverse to reach such objective point and path, from where she was when the Oceanus left her pier, than the distance which the Oceanus had to traverse, to reach such objective point and path, from where she, the Oceanus, was, when she left her pier. The Newport did not make up that difference of distance until the vessels came together, notwithstanding she was the faster boat of the two, which shows that she was all the time really behind the Oceanus and overhauling her. Such overhauling, too, was interrupted by the slowing of the Newport at one time. Yet she persisted in trying to reach such objective point and path without paying the least heed to the Oceanus, which was pursuing her way between the Newport and the shore. The Oceanus kept her proper course, observing

the Newport, and had no occasion to suppose that she would be crowded by the Newport. The Newport closed in upon the Oceanus, and, by doing so, caused the collision. The Newport was, on the evidence, and in the sense of the law, the following boat. The fact that she left her pier first, does not, in view of the course she took relatively to the course of the Oceanus, furnish the proper test of the question as to which boat was the foremost one, in the courses of the two towards the objective point and path before mentioned. The Newport, having abundance of room on her starboard hand, towards Governor's Island, improperly crowded the Oceanus, by closing in on the proper course of the Oceanus, so as to cut her off. It was her duty to have observed the Oceanus, and to have kept out of the way of the Oceanus. The latter kept her course. No one in the pilot house of the Newport paid any attention to the Oceanus. This was gross negligence, and was the cause of the collision. The moment the Oceanus saw that the Newport's movement would cause a collision, the Oceanus stopped and backed. The Newport did not stop or back. The Newport thrust herself against the Oceanus, and brought upon herself all the damage that ensued.

The courses of the vessels, as they went down the river, to reach such objective point and path, were not crossing, so as to involve risk of collision, within the meaning of the 14th article of the steering and sailing rules (Act April 29, 1864; 13 Stat. 60), so as to require the Oceanus, as having the Newport on her own starboard side, to keep out of the way of the Newport. And, even if they could be so considered, the Newport did not obey article 18. by keeping her course, so as to enable the Oceanus to keep out of the way, but crowded in on the course of the Oceanus, so that, on the evidence, the Oceanus, while carefully avoiding the vessels at anchor, by pursuing the only path open to her, was run into by the Newport. Nor were there any dangers of navigation or other special circumstances existing to justify what the Newport did.

The case is one entirely free from doubt, and the libel must be dismissed, with costs.

[On appeal to the circuit court, the decree of this court was affirmed. Case No. 10,415.]